## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

ARRON MICHAEL LEWIS,                                                    PLAINTIFF
ADC #151373

v.                                   5:16CV00043-BSM-JTK

WENDY KELLEY, et al.                                                    DEFENDANTS

### PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge
Brian S. Miller. Any party may serve and file written objections to this recommendation.
Objections should be specific and should include the factual or legal basis for the objection.
If the objection is to a factual finding, specifically identify that finding and the evidence that
supports your objection.  An original and one copy of your objections must be received in
the office of the United States District Court Clerk no later than fourteen (14) days from the
date of the findings and recommendations.  The copy will be furnished to the opposing party.
 Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different,
or additional evidence, and to have a hearing for this purpose before the District Judge, you
must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a
hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.     The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## I.     Introduction

Plaintiff Arron Lewis is a state inmate incarcerated at the Varner Super Max Unit (VSM) of the Arkansas Department of Correction (ADC).   He filed this pro se action pursuant to 42 U.S.C. § 1983, seeking monetary and injunctive relief for violations of his constitutional rights by Defendants.  (Doc. No. 1)

Pending before the Court is the Defendants' Motion for Summary Judgment, Brief in Support and Statement of Facts (Doc. Nos. 49-52).   Plaintiff filed a Declaration and Response to the Motion (Doc. Nos. 57-58) and Defendants filed a Reply (Doc. No. 59).

## II.     Complaint

Plaintiff arrived at the Tucker Maximum Security Unit (Tucker Max) on October 6, 2014, and was placed in administrative segregation (ad seg).  In March, 2015, Defendant

Outlaw granted Plaintiff permission to correspond with his wife, Crystal Lowery, who was at that time incarcerated at the Pulaski County Regional Detention Facility (Jail).  This permission was granted after Plaintiff filed a lawsuit, complaining about the denial of correspondence with his wife.  Lewis v. Kelley, et al., 5:15cv00058-JM (E.D.AR.).  He claims Outlaw threatened to transfer him to another Unit if he did not sign a consent to dismiss the lawsuit against him.  Lowery was transferred to the McPherson Unit of the ADC in July, 2015, and Plaintiff was transferred a week later to the VSM.  Plaintiff complains that he was not provided notice or a hearing prior to his transfer, and that upon his arrival at VSM, he was immediately placed in ad seg. He also complains that after his transfer, he was no longer permitted to correspond with his wife, in retaliation for the filing of the previous lawsuit.  He submitted proof of his marriage to Defendant Dixon, Warden of the McPherson Unit, pursuant to her request.

Plaintiff claims that he has been housed in ad seg continuously since his arrival at the ADC in October, 2014, and that Defendants have failed to provide him with meaningful reviews.  He claims his incarceration poses an atypical and significant hardship, that he has suffered five injuries since incarcerated, and that he is under constant emotional distress and mental anguish.

In his deposition testimony, Plaintiff outlined his claims against Defendants as follows: 1) two due process claims, relating to the denial of a hearing prior to his transfer, and the lack of meaningful classification reviews; 2) retaliatory transfer; 3) retaliatory denial of the right to correspond with his wife; 4) denial of First Amendment right to correspond

with his wife; and 5) corrective inaction by many of the Defendants to rectify the unconstitutional treatment.  (Doc. No. 50-12, p. 41)

## III.   Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"  Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A.   Due Process

#### 1.   Incarceration in Ad Seg

According to the Declarations of Defendants Jenkins, Outlaw, Washington, and Budnick (Doc. Nos. 49-3, 49-1, 49-6, 49-4), Lewis received reviews of his assignment to ad

seg at least twenty-five times, between October, 2014, and the filing of this action on February 17, 2016. These reviews consisted of seven-day reviews, thirty-day reviews, sixty-day reviews and Warden's reviews. (Id.) In addition, during the sixty-day reviews, class promotion reviews, and Warden's reviews, a hearing is conducted in which the inmate can ask questions, present evidence, and express complaints or concerns. (Id.)

### a) Exhaustion

Defendants first state that Plaintiff exhausted his administrative remedies with respect to only two of these reviews, which occurred on November 5, 2014, and November 12, 2015. According to the ADC grievance policy, Administrative Directive (AD) 14-16 (Doc. No. 50-5), and the declaration of Barbara Williams, an ADC inmate grievance supervisor (Doc. No. 49-7), an inmate must file a grievance within fifteen days of the occurrence of the incident at issue. In MX-14-02554, filed on November 18, 2014, Plaintiff complained that he was not provided with written documentation of the reason for his continued segregation during his November 12, 2014 classification review. (Doc. No. 49-7, p. 2) In addition, since the grievance policy requires that grievances be filed within fifteen days of the incident at issue, Defendants state that the November 18, 2014 grievance could only be related to Plaintiff's November 5, 2014, and November 12, 2014 hearings. (Id., pp. 2-3) The second exhausted grievance, VSM 15-05014, was filed on November 10, 2015. (Doc. No. 50-3) However, according to Ms. Williams, Plaintiff did not have any classification hearings within fifteen days of the filing of this grievance, and therefore, he did not exhaust his remedies as to any

reviews in this grievance.  (Doc. No. 49-7, p. 3)[1]

In further support of their exhaustion argument, Defendants rely on <u>Bailey v. Hobbs</u>, where an inmate similarly complained his due process rights were violated because the ADC failed to conduct meaningful reviews.  No. 5:11CV00031-JLH, 2012 WL 3038856 (E.D.AR) Although the plaintiff claimed that the court should treat all his grievances as extending back to all prior reviews, the court held that he failed to exhaust his remedies as to reviews which were conducted more than fifteen days prior to filing a grievance which was ultimately exhausted.  <u>Id</u>., pp. 5-6 Based on this case, Defendants state that Plaintiff exhausted his administrative remedies at the most only as to the November 5, 2014, and November 12, 2014 reviews.

In his Response, Plaintiff states he has exhausted all grievances as to all his claims and that a genuine issue of fact remains concerning the exhaustion issue.

In Reply, Defendants state that Plaintiff's failure to specifically dispute their exhaustion argument should result in an abandonment of his claim.

> According to the PLRA,
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), <u>unconst'l on other grounds</u>, <u>Siggers-El v. Barlow</u>, 433 F.Supp.2d 811,

---

[1]Defendants refer to a third grievance Plaintiff filed, VSM 15-03997, but state it was rejected as frivolous on appeal.  (Doc. No. 50-2)

813 (E.D. Mich. 2006). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit. In Booth v. Churner, the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." 532 U.S. 731, 741 (2001). In addition, the United States Court of Appeals for the Eighth Circuit held, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000) (quoting Castano v. Nebraska Dep't of Corrections, 201 F.3d 1023, 1025 (8th Cir. 2000)). In Johnson v. Jones, the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory." 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in original.) Finally, in Jones v. Bock, the Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." 549 U.S. 199, 218 (2007).

Further, in Bailey, the court held that due process claims for alleged violations which occurred at separate and discrete reviews of his confinement were covered only by timely grievances filed within the ADC procedural rules. "[Bailey] cannot rely upon the timeliness of his grievances with respect to later reviews to render timely his grievances as to earlier

7

reviews." 2012 WL 3038856 *4.

In this particular case, Defendants refer to three grievances which Plaintiff filed as to this issue. The first grievance, MX 14-2554, was filed as an informal resolution on November 12, 2014, and stated, "On 11-12-14 I received an Administrative Segregation Review receipt. No reason is given for my continued segregation and I would like to be released.  Specifics: none of my reviews contain reasons!" (Doc. No. 49-4, p. 1) The Warden response noted that Plaintiff was told at his initial assignment that he was placed in ad seg for security reasons and that he would be provided another hearing on 12/17/2014.  (Id., p. 2)   The assistant director concurred with this response on appeal.  (Id., p. 3)  In looking at the reviews conducted fifteen days prior to the filing of the informal resolution on November 12, 2014, it appears that the grievance could have covered the seven-day reviews which were conducted on October 29, November 5, and November 12, 2014. (Doc. No. 49-1, p. 2) Plaintiff did not limit his grievance to one single review; rather, he complained that "none" of his reviews contained reasons.  Therefore, the Court finds that Plaintiff exhausted his remedies as to those three reviews in grievance MX 14-2554.

The second grievance referred to by Defendants is VSM 15-05014, which was filed on November 10, 2015 (Doc. No. 50-3)  In this grievance, Plaintiff complained that he had not received a warden's review of his thirteen-month ad seg status.  (Id.) The Warden responded that Plaintiff was scheduled for that review on December 2, 2015, and the assistant director concurred, noting that Plaintiff received periodic reviews, including a thirty-day review on October 12, 2015.  (Id., p. 3)  Therefore, the Court finds that this grievance relates

only to the lack of a meaningful warden review claim.

The third grievance referred to by Defendants is VSM 15-03997, which Plaintiff filed on September 1, 2015.  (Doc. No. 50-2) This grievance does not address a particular review, but rather, appears to encompass Plaintiff's complaint of overall inadequate reviews.  He complained, "My complaint is that my Ad Seg Reviews are 'sham reviews' and meaningless," and he named Defendants Kelley and the wardens and classification officers at VSM and Tucker Max. (Id.) The response to the informal resolution was, "Ms. Washington advised you were assigned to Ad Seg at a previous facility for safety reasons. Therefore when you transferred to VSM the assignment remained as follows." (Id.)  Plaintiff, however, received a rejection of the formal grievance on September 10, 2015, where a box was marked as "either non-grievable, untimely, was a duplicate of, or was frivolous or vexatious."  (Id., p. 2)  Plaintiff appealed that response, stating,

> There is nothing frivolous about this grievance.  My classification reviews are meaningless and sham reviews.  I am entitled to meaningful reviews where I am informed of the reasons why I'm being held in Ad Seg and the reason why I'm not released.  Even the reason for my continued segregation.  The reviews are a joke!  Grieving them is not frivolous.

(Id.) On appeal, however, the Chief Deputy Director rejected the appeal, circling "frivolous" as the reason.

This situation causes the Court concern for a few reasons.  First, no specific reason is given on any level for why Plaintiff's complaint was rejected as frivolous.  Next, by appealing the grievance through all levels of the process, Plaintiff basically did all he could to exhaust the issue.  Although the Warden and Deputy Director refused to specifically

address his Complaint, Plaintiff appealed each decision, and there appears to have been no other avenue for Plaintiff to grieve this issue.  In <u>Ross v. Blake</u>, the United States Supreme Court held that an administrative remedy is unavailable when "it operates as a simple dead end," or when it "might be so opaque that it becomes, practically speaking, incapable of use." 136 S.Ct. 1850, 1859 (2016).  The Court finds that in this particular case, where Plaintiff's continued complaint was rejected as "frivolous," without further explanation, the grievance process essentially was made unavailable to him.  Although the merits of Plaintiff's grievance were not addressed, Plaintiff technically exhausted all the steps of the grievance process. Given these factors, the Court finds that Plaintiff exhausted his administrative remedies as to all reviews conducted prior to the filing of the September 1, 2015 informal resolution.

### b) Due Process

Defendants state they are protected from liability by qualified immunity, which protects officials who act in an objectively reasonable manner.  It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law, not a question of fact.  <u>McClendon v. Story County Sheriff's Office</u>, 403 F.3d 510, 515 (8th Cir. 2005).  Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. <u>See</u> <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is

effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful.  Pearson v. Callahan, 555 U.S. 223, 232 (2009).[2] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative.  Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

Defendants further state they did not violate Plaintiff's due process rights because Plaintiff did not have a protected liberty interest with respect to his confinement in ad seg, and that all his reviews were meaningful.  As of the date of the grievance on  November 18, 2014, Plaintiff had been confined in ad seg for one and one-half months.  At the most, Defendants state Plaintiff was confined in ad seg for thirteen months.  Defendants note that the courts have held that longer confinements of one year or even twenty-six months do not pose atypical and significant hardships so as to confer a protected liberty interest.  See Ballinger v. Cedar Cty., Mo., 810 F.3d 557, 562 (8th Cir. 2016), and Rahman X v. Morgan, 300 F.3d 970, 974 (8th Cir. 2002). Therefore, Defendants assert that Plaintiff's ad seg confinement, at most, for thirteen months, is not atypical or significant, citing Chestang v.

---

[2]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

<u>Varner Super Max</u>, 496 F.App'x 684, 686 (8th Cir. 2013).  In addition, Defendants note that as of the filing of this Complaint, Plaintiff had received at least twenty-six separate reviews of his ad seg confinement. (Doc. Nos.  49-1, 49-3, 49-4, 49-6) The Declarations of Defendants Outlaw, Jenkins, Budnick, and Washington  provide that Plaintiff was afforded the opportunity to attend review hearings where he could make comments and present evidence on numerous occasions, and that at each of the hearings, they discussed the reasons for his continued confinement in ad seg. (Doc. Nos. 49-1, 49-3, 49-4, 49-6)

In his Response, Plaintiff states that he has never been confined in general population and was never informed of the reason for his initial or continued placement in ad seg, or how he can be released to general population.  He states that all human contact is prohibited in ad seg, that he can only attend yard call for one hour, five days per week, and that he has no access to special programs.  In light of such, he states that his continued placement in ad seg violates his due process rights.

In Reply, Defendants state that Plaintiff provides nothing more than self-serving declarations, and fails to substantiate his allegations with sufficient probative evidence which would permit a finding in his favor.  <u>Davidson & Assocs. v. Jung</u>, 422 F.3d 630, 638 (8th Cir. 2005).

In <u>Sandin v. Conner</u>, the Court held that inmates do not possess a due process liberty interest in freedom from administrative or punitive segregation. 515 U.S. 472, 484 (1995). Recognizing, however, that states may themselves create certain protected  liberty interests, the Court noted that those would be "limited to freedom from restraint which, while not

exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause...imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. Following Sandin, the United States Court of Appeals for the Eighth Circuit Court held that an inmate's demotion from administrative segregation to punitive isolation was "not the sort of deprivation that qualifies as 'atypical and significant.'" Kennedy v. Blankenship, 100 F.3d 640, 642 (1996). The Court did not consider Kennedy's placement in punitive isolation as an atypical and significant event, even though the prisoner faced restrictions in privileges regarding mail, telephone, visitation, commissary, and personal possessions. Furthermore, in Phillips v. Norris, the Court held that the absence of contact visitation, exercise privileges, and chapel rights for thirty-seven days did not constitute an atypical and significant hardship, stating, "[w]e have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship." 320 F.3d 844, 847 (8th Cir. 2003). See also Orr v. Larkins, 610 F.3d 1032, 1033 (8th Cir. 2010), where the court held that the plaintiff's incarceration in administrative segregation for nine months was not atypical and significant, or unconstitutional; Howard v. Collins, 129 F.3d 121, 1997 WL 710314 (8th Cir. 1997) (unpublished), where an eight-month stay in ad seg was not atypical and significant; and Jones v. Walker, No. 5:07CV00094-BRW-HDY (E.D.Ark. 2007), where an inmate's stay in ad seg for more than a year was not considered atypical and significant.

In Williams v. Hobbs, the Court upheld the district court's finding that an inmate's thirteen-year confinement in ad seg constituted an atypical and significant hardship within

the meaning of <u>Sandin</u>, and found that the inmate's periodic reviews were not meaningful. 662 F.3d 994 (8th Cir. 2011). The Court noted that a meaningful review is one that does not "make it virtually impossible for an inmate ... ever to persuade the Warden that he should be returned to population," must not fail to give the inmate a reason for his continued confinement, and must apprise the inmate of any new reasons to continue his confinement to segregation. <u>Id</u>., pp. 1007-1009 (quoting Kelly v. Brewer, 525 F.2d 394, 401-402 (8th Cir. 1975)).  In this particular case, Plaintiff claims that he was never given reasons for his initial placement on ad seg, or for his continued status.

Given this Court's finding, above, that Plaintiff exhausted his remedies as to this issue up until the filing of the September, 2015 grievance, the Court will analyze Plaintiff's confinement in ad seg from October 2, 2014, through September, 2015.  At most, this is an eleven-month period in which Plaintiff was incarcerated in ad seg.  According to the declaration of Defendant Randall Watson, VSM Warden, inmates incarcerated at VSM are not forbidden to speak with one another while they are in their cells, the lights in the cells are off from 10:30 p.m. to approximately 3:30 a.m., the inmates are permitted to participate in both outside yard call and special programs outside their cells, and their placement at VSM is not indefinite. (Doc. No. 49-5, pp. 2-3)  Although Plaintiff complains that he cannot speak with other inmates and that lights are on at all times, he does not include any other allegations to persuade this Court that his confinement in ad seg constituted an atypical and significant deprivation in relation to ordinary incidents of prison life.  In light of the case law cited above, Plaintiff's confinement in ad seg for eleven months did not implicate a liberty

interest.

In addition, the Court finds ample evidence that Plaintiff received numerous meaningful reviews. In Defendant Outlaw's declaration, he states that Plaintiff was initially provided a 72-hour hearing on October 8, 2014, following his arrival at the Maximum Security Unit. (Doc. No. 49-1) Outlaw was not present at that hearing, but after reviewing the records of the hearing, he states that because of the publicity surrounding Plaintiff's crime, the committee felt his safety to be a concern until his assignment could be reviewed by the classification committee. (Id.)[3] Outlaw states he was not present at the seven-day hearing on October 29, 2014, but the committee records show that the ad seg placement was approved for Plaintiff's safety and because he was a class II inmate. (Id., pp. 2-3) He further state he was present at reviews on November 4, 2014, November 12, 2014, and November 19, 2014, where the committee unanimously approved Plaintiff's time in ad seg for his safety. (Id., p. 3) He also participated in a review on December 10, 2014, where Plaintiff was present and made comments, and the committee upgraded Plaintiff's class to I-C and deferred the decision whether to release him from ad seg for one week. (Id.) Plaintiff participated in a review conducted on December 17, 2014, to consider whether he should be released from ad seg. (Id.) However, the committee approved his status in ad seg based on charges still

---

[3]Plaintiff was convicted of the 2014 kidnaping and capital murder of Arkansas real estate agent Beverly Carter. State v. Aaron M. Lewis, Pulaski County Circuit Court No. 60CR-14-3928. His wife, Crystal Lowery, was a co-defendant who pleaded guilty to first-degree murder and testified against Plaintiff at the trial. Id. She also filed a divorce action against Plaintiff in October, 2014, which eventually was dismissed on Plaintiff's motion for failure to serve a summons. Lowery v. Lewis, Pulaski County Circuit Court No. 60DR-14-4528.

pending against him in the free world and concerns about his security in the unit.  (Id., pp. 3-4)  During reviews on January 21, 2015, and February 25, 2015, Plaintiff's status remained the same, based on his disciplinary history and the fact that his good-time class dropped to Class IV.  (Id., p. 4)  Although Plaintiff's status was upgraded to Class II on April 29, 2015, he remained in ad seg for his own safety and because he was a class II inmate.  (Id.)  Plaintiff attended his sixty-day review on June 3, 2015, at which time the committee approved his ad seg status but upgraded his class to 1-C.  (Id., p. 5)  His status again was  unanimously approved at the July 7, 2015 hearing, and Plaintiff was transferred to VSM on July 22, 2015.  (Id.)  Outlaw states that during all these reviews, Plaintiff was given the opportunity to ask questions, express concerns and present evidence, and was advised of the reasons for his continued confinement in ad seg.  (Id.)

In addition, Defendant Washington states in her Declaration that she participated in every review of Plaintiff's assignment to ad seg except for the review conducted on October 12, 2014.  (Doc. No. 49-6, p. 2)  She states at the VSM review on July 23, 2015, Plaintiff was present and the committee assigned him to ad seg because he required closer supervision than could be provided in the general inmate population.  (Id.) The committee decided to keep him on ad seg on August 17, 2015, based on his disciplinary history and because he was a Class 1-C inmate.  (Id.)  At his sixty-day review on September 14, 2015, the committee again voted for him to remain on ad seg due to his disciplinary history.  (Id., p. 3)   In light of these declarations, the Court finds that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, establish a violation of a

constitutional or statutory right.

### 2.     Transfer to VSM

#### a)     Exhaustion

Defendants also claim that Plaintiff failed to exhaust his administrative remedies with respect to his allegation that he was improperly transferred from Tucker Max to VSM without notice or a hearing.   They state that although Plaintiff exhausted a grievance complaining about a lack of due process associated with his transfer, this issue was not exhausted because he did not specifically grieve that he was denied a pre-transfer hearing. Plaintiff filed grievance VSM 15-03744 on August 14, 2015, complaining that "I have not been given any hearings or due process regarding my transfer to the state Supermax."  (Doc. No. 49-12, p. 1)  Defendants state that because Plaintiff did not specify a lack of due process prior to his transfer (Defendants' emphasis) in this grievance, he did not exhaust this issue. Furthermore, within the meaning of Bailey v. Hobbs, since Plaintiff was transferred more than fifteen days prior to the filing of this grievance, he did not properly grieve something which he claims should have occurred prior to the July 22, 2015 transfer, according to Defendants.

Plaintiff, in response, claims a sufficient dispute of fact concerning both whether he exhausted his remedies as to this claim, and as to whether he was deprived of due process.

In VSM 15-03744, as noted above, Plaintiff specifically complained that he was not provided a hearing or due process with respect to his transfer.  (Doc. No. 49-12, p.1) The Warden found the issue without merit, based on the lack of date, place, personnel involved

or witnesses, as set forth in the grievance procedure. (Id., p. 2)  In his appeal, Plaintiff specified that he was transferred from Tucker Max to VSM on July 22, 2015, and did not receive a hearing prior to or after that time.  (Id.)  The Assistant Director responded to the appeal that Plaintiff was assigned to ad seg for his safety and has received periodic reviews, and therefore, found the grievance without merit. (Id., p. 3)  The Court finds that Plaintiff adequately complied with the ADC grievance process by adding more specifics to his appeal, and that he properly appealed the grievance to the highest level.  In addition, his grievance was addressed on the merits without any mention that it was filed beyond the fifteen-day policy requirement. Therefore, the Court disagrees that Plaintiff failed to exhaust his remedies as to this issue.

### b)    Due Process

Defendants again state they are protected from liability by qualified immunity, because Plaintiff does not have a constitutional right to a pre-transfer hearing.  In Diaab v. Terry, the Court held that even if the ADC violates its own policy by transferring an inmate to ad seg in a maximum security unit without a pretransfer hearing, the inmate cannot state a due process claim for relief.  221 F.3d 1341, 2000 WL 1006648 (8th Cir. 2000).  However, in this case, the ADC did not violate any policy, because Plaintiff acknowledged in his deposition testimony that he was not aware of any ADC policy requiring a pretransfer hearing.  (Doc. No. 50-12, p. 16) Defendants note that the only relevant ADC policy requiring a pretransfer hearing involves transfers to the VSM behavioral modification program, which was not the situation in this case.  (AD 10-34, Doc. No. 50-6).  They also

state that Plaintiff's transfer did not involve an atypical and significant deprivation so as to implicate the protections of the due process clause, because a hearing is not required prior to transferring an inmate to ad seg, and that the ADC has the right to transfer an inmate to any state prison.  See Jones v. Mabry, 723 F.2d 590, 594 (8th Cir. 1983), and Meachum v. Fano, 427 U.S. 215, 225 (1976).  Finally, Defendants state this situation differs from the situation in Wilkinson v. Austin, because the conditions at VSM are less restrictive than the "severe limitations" imposed on inmates at the Ohio State Penitentiary (OSP) in Wilkinson. 545 U.S. 209, 224 (2005).  Unlike OSP, VSM inmates are not prohibited from conversing, and the lights do not remain on twenty-four hours per day.  (Doc. No. 49-5, p. 2)  In addition, placement at VSM is not indefinite, is not limited only by an inmate's sentence, and inmates at VSM are often transferred to other prison units.  (Id., p. 3) Finally, VSM placement does not, like in Wilkinson, disqualify an otherwise eligible inmate for parole consideration.  (Id.)

Again, Plaintiff responds by stating that he was improperly denied a pre-transfer hearing and that genuine issues of fact exist concerning his entitlement to a hearing and whether the VSM placement is indefinite.

Generally, an inmate does not have a constitutional right to be housed in any particular facility, and therefore, a transfer does not impact a protected liberty or property interest. See Meachum v. Fano, 427 U.S. at 225.  In Jones v. Mabry, the Court stated as follows:

> 'It is safe to say that in all prisons, except perhaps some extremely minimum security institutions, it is found to be absolutely necessary for a number of non-

> punitive reasons to segregate individual inmates from the general prison
> population, and to hold them in segregated status for varying or indefinite
> periods of time' (quoting <u>Kelley v. Brewer</u>, 525 F.2d at 399).... As long as there
> is a procedure for reviewing periodically the situations of inmates who are in
> administrative segregation, see *id.* at 400, and there was such a procedure with
> respect to the HSR classification, due process is satisfied, and no pre-
> deprivation hearing is required by the federal constitution. If, on the other
> hand, an inmate is deprived of privileges or placed in a special confinement
> status in order to punish him for past misconduct, then due process requires
> some kind of hearing beforehand.

723 F.2d at 594. Furthermore, Plaintiff has provided no evidence or facts to show that his transfer from Tucker Max to VSM resulted in an atypical and significant deprivation in relation to ordinary incidents of prison life. As mentioned earlier, inmates at VSM are able to communicate with each other, participate in programs, engage in yard call, and are entitled to lights out time in the evening for sleep purposes. Plaintiff provides no evidence that the conditions at VSM are as restrictive as in <u>Wilkinson</u>, or that placement at VSM would disqualify an otherwise eligible inmate for parole consideration. In addition, Defendants provided proof that the day after Plaintiff's transfer, he participated in an initial review for placement in ad seg there. (Doc. No. 49-4, 49-6) Therefore, the Court finds that no reasonable fact finder could find, based on the facts as alleged by Plaintiff, that Defendants violated Plaintiff's constitutional right when they transferred him to VSM without a hearing.

## B.     First Amendment

In March, 2015, Plaintiff was granted permission to correspond with his wife and co-Defendant, Crystal Lowery, while Plaintiff was incarcerated at Tucker Max Unit and Lowery was incarcerated at the Pulaski County Regional Detention Facility. (Doc. No. 49-1, p. 6) However, after Lowery was transferred to the McPherson Unit of the ADC in July, 2015, and

Plaintiff was transferred to VSM later that same month, Plaintiff was denied the right to correspond by then VSM Deputy Warden Defendant Budnick. (Doc. No. 49-4, p. 1) Plaintiff then submitted a request to Defendant Dixon, Warden of the McPherson Unit, who denied it based on the lack of proof of marriage. (Doc. No. 50-9) After Plaintiff submitted his marriage certificate, then McPherson Warden Defendant Banks again denied his request. (Doc. No. 50-8)

### 1.    Exhaustion

Defendants state that Plaintiff exhausted only two grievances with respect to this issue, VSM 15-03394, and VSM 1505329.  Grievance 14-03394 concerned the denial of correspondence on July 29, 2015 and grievance 15-05329 concerned a letter returned to Plaintiff on December 4, 2015.  Any other claim was not exhausted, according to Defendants. See Barbara Williams declaration (Doc. No. 49-7, p. 5)

Plaintiff claims a material dispute of fact exists concerning the exhaustion issue.

In grievance VSM 15-03394, Plaintiff claimed that although Defendant Outlaw had approved him to correspond with his wife and his sister, he was informed he could no longer correspond with them. (Doc. No. 49-10, p. 1)  The initial response to his informal resolution, filed July 29, 2015, stated that ADC policy requires that Plaintiff obtain correspondence permission from both the sending and receiving ADC warden/center supervisor.  (Id.)  The Warden response recited the applicable ADC regulation, Administrative Regulation (AR) 860, which requires that correspondence between incarcerated individuals be restricted to members of the immediate family and must be approved by the sending and receiving

Wardens.  (<u>Id</u>., p. 2) The Assistant Director concurred with the Warden's response on appeal. (<u>Id</u>., p. 4)  In grievance VSM 15-05329, filed December 8, 2015, Plaintiff complained that he  received a returned letter he mailed to his wife, despite the fact that he was approved to write his wife and had provided his marriage certificate as proof.  (Doc. No. 50-4, p.1)  The initial response to the informal resolution stated that Warden Banks no longer will allow the correspondence because Plaintiff and Lowery were co-defendants. (<u>Id</u>.) The Warden response indicated that Plaintiff could appeal the Warden's correspondence decision.  (<u>Id</u>., p. 2)  On appeal, the Assistant Director concurred with the Warden's response.  (<u>Id</u>., p. 3)

The Court finds that these two grievances sufficiently exhausted Plaintiff's present claim that his First Amendment right was violated when his right to correspond with his wife was denied.

### 2.     First Amendment

Defendants acknowledge that inmates have a First Amendment right to send and receive mail, but that reasonable restrictions may be placed on that right, citing <u>Jones v. N. Carolina Prisoners' Labor Union, Inc.</u>, 433 U.S. 119, 125 (1977).  However, they state they are entitled to qualified immunity, because they did not violate a clearly-established constitutional right, citing exceptions which are reasonably related to legitimate penological interests.  <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987).  Pursuant to the four factors set forth in <u>Turner</u>, Defendants state there is a rational connection between the ADC regulation of Plaintiff's correspondence with his co-defendant wife and the state's interests in security and good order of the correctional units.  Therefore, the requirements that both wardens approve

such correspondence and that it is maintained at a "wholesome and constructive level" is reasonable.  See Doc. No. 50-7, p.1.  Defendants further state that the regulation of correspondence in this case was reasonable for several reasons: 1) at the time of the first grievance, Plaintiff had not obtained the permission of either wardens at the VSM or McPherson Units; 2) Plaintiff provided no legal grounds to support his claim that the two were married, and they had different last names; 3) they were co-conspirators in committing the crimes for which they were incarcerated, and Lowery testified against Plaintiff at trial; 4) Lowery filed for divorce from Plaintiff; and 5) Lewis had, on a previous occasion, attempted to smuggle a letter to Lowery in a package addressed to his attorney and labeled "legal mail." (Doc. No. 50-11) Therefore, given all these factors, Defendants state that the correspondence regulation is reasonably related to their interests in security.

Next, Defendants state that although he was initially prohibited from corresponding with Lowery, Plaintiff was not prohibited from corresponding with his sister, who was incarcerated in another state, or with other non-incarcerated family members, friends, and members of the press.  In addition, they state the impact of accommodating Plaintiff's request on guards, inmates, and prison resources would have a significant "ripple" effect on these groups, considering the need to prevent inmates from undermining security discipline and order.  Defendants state that Plaintiff's correspondence with Lowery could have effects at both Units, and that there are no ready alternatives to the regulation of the correspondence which would satisfy the ADC's penological interests.  Finally, Defendants note that Plaintiff's claim for injunctive relief with respect to this issue is moot, because Plaintiff may

now correspond with Lowery.  (Doc. Nos. 34, 49-1, p. 7)

Plaintiff claims Defendant Outlaw cut off his correspondence privileges in retaliation, when Plaintiff failed to dismiss the prior lawsuit alleging denial of correspondence.  He also claims the denial was not reasonably related to security concerns, and therefore, violative of his First Amendment rights.

When faced with a free exercise claim, courts should consider the following: whether there is a valid rational connection between the regulation and the governmental interest, whether an alternative means is available to the prison inmates to exercise their right, whether an accommodation would have a significant effect on guards, inmates and prison resources, and whether there is an available alternative which accommodates the prisoner at a de minimis cost.  Turner v. Safley, 482 U.S. at 89-90.  An inmate's right to correspond is subject to "the institution's right to censor letters or withhold delivery if necessary to protect institutional security, and if accompanied by appropriate procedural safeguards."  Hudson v. Palmer, 468 U.S. 517, 547 (1984).  In addition, prison officials may regulate mail as long as the regulation is "reasonably related to legitimate penological interests."  Thornburgh v. Abbott, 490 U.S. 401, 404 (1989).

In this particular case, the Court finds that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right.  The ADC regulation at issue permits inter-unit correspondence between immediate family members, subject to general correspondence rules.  (Doc. No. 50-7, p. 2)  In addition, the correspondence must be approved by both the

sending and receiving Wardens/Center Supervisors.  (Id.)  In this case, Plaintiff complained that his permission was withdrawn in July, 2015.  There is no dispute, however, that this occurred after Plaintiff was transferred to a new Unit (VSM), and after his wife, Crystal Lowery, was transferred to the McPherson Unit of the ADC. There also is no dispute that prior to deciding Plaintiff's request,  Defendant Dixon, as Warden of the McPherson Unit, asked Plaintiff to provide proof of marriage to Lowery. (Doc. No.  50-9) However, after Plaintiff presented such proof, Defendant Budnick, who was Warden of the VSM Unit beginning in August, 2015, and Defendant Banks, who was Warden of the McPherson Unit in November and December, 2015, disallowed Plaintiff to correspond with Lowery for a number of reasons.  (Doc. Nos. 49-4, 50-8)  Those included: the two were co-conspirators in committing the crimes for which they were incarcerated; Lowery testified against Plaintiff in the criminal trial; the two did not share the same last name; Plaintiff previously attempted to communicate with Lowery improperly; and Lowery had filed for divorce from Plaintiff. (Id.)  Banks stated that given these factors at that time, he did not feel that correspondence between the two would be "wholesome and constructive" as set forth in AR 860.  (Doc. No. 50-8)

The ADC regulation, AR 860, requires that the Unit Wardens grant permission and limits such correspondence to that which is "wholesome and constructive." (Doc. No. 50-7) As set forth in Turner, the Court finds that the regulation is logically connected to legitimate security concerns of both the institutions involved.  In addition, in this particular case, the regulation of correspondence between Plaintiff and Lowery was  reasonable, considering all

the factors cited by Budnick and Banks, above.  The Court also finds that, based on the

Turner factors, Plaintiff was permitted alternative ways of expression, because he could

correspond with other family members, friends, attorneys, and even members of the media.

(Doc. No. 50-12, p. 26-28) In addition, the impact of accommodating Plaintiff's request

potentially affected security concerns at the two Units, and could have involved prison

security, discipline and order.  Finally, the Court finds that there were no ready alternatives

available to the restriction.  Given all these factors, the Court finds no violation of Plaintiff's

First Amendment rights by Defendants.

### C.     Retaliation

Plaintiff claims Defendants retaliated against him for filing a prior lawsuit, by

transferring him to the VSM Unit in July, 2015, and by withdrawing permission to

correspond with Lowery.

### 1.     Transfer

#### a)     Exhaustion

Defendants state Plaintiff failed to exhaust his administrative remedies as to this

claim.  In VSM 15-03706, filed on August 14, 2015, Plaintiff complained he was transferred

by Outlaw and Watson in retaliation for the filing of the prior lawsuit.  (Doc. No. 49-11)

This grievance was rejected as a non-grievable issue (transfer), and Plaintiff's appeal was

denied.  (Id., pp. 2-3)  In VSM 15-03880, filed August 25, 2015, Plaintiff again complained

about the retaliatory transfer, naming Defendants Kelley, Outlaw, and Watson. (Doc. No. 49-

13) This grievance also was rejected as non-grievable, and the appeal was rejected for

unknown reasons.  (Id., pp. 2-3)  Barbara Williams states these grievances were properly rejected because inmate transfers are not grievable, and because they were not timely filed within fifteen days of his transfer.  (Doc. No. 49-7, p. 4)  Therefore, Defendants state Plaintiff's retaliatory transfer claim against them should be dismissed for failure to exhaust.

Plaintiff states in response that a genuine dispute of fact exists concerning whether he properly exhausted.

According to the grievance policy, AD 14-16, transfers are not grievable.  (Doc. No. 50-5, p. 2)  However, "[c]laims of Retaliation, even if related to an issue referenced above, are Grievable."  (Id, p. 3)  In this particular case, in both grievances he submitted, Plaintiff clearly claimed that his transfer was in retaliation. However, both grievances were rejected as involving non-grievable issues.  The Court finds that these rejections effectively made the grievance process unavailable to Plaintiff within the meaning of the PLRA.  See Ross v. Blake, 136 S.Ct. At 1854.   In addition, although Defendants correctly note that the grievances were not filed within fifteen days of the incident grieved, that reason was never recited in the rejection notices sent to Plaintiff.  Therefore, the Court finds that Plaintiff had no other recourse available to him and that Defendants' exhaustion argument should be denied.

### b)      Retaliation

Defendants state they are entitled to qualified immunity on the retaliatory transfer claim, because Plaintiff cannot show that "but for" a retaliatory motive, he would not have been transferred.  Noting that prisoners have no constitutional right to remain in a particular

27

institution, and that ADC can transfer an inmate "for any reason or for no reason," (assuming no retaliation), Defendants state that Plaintiff cannot show that the actual motivating factor for his transfer to VSM was the previous lawsuit he filed.  See Rentschler v. Kaiser, 72 F.3d 133, 1995 WL 732795 (8th Cir. 1995).   In this case, Plaintiff filed the prior lawsuit on February 24, 2015, against Kelley, Outlaw, and Stanley Robinson (not a party here), claiming that they violated his First Amendment by denying him the right to correspond with Lowery. Lewis v. Kelley, et al., No. 5:15CV00058-JM-BD (E.D.AR).   Plaintiff's First Amendment claim in that case was dismissed, pursuant to summary judgment, on September 11, 2015, finding that his claim against Outlaw was moot because he was granted permission to correspond and then was transferred to another Unit outside of Outlaw's control.  Id., Doc. Nos. 44, 46.[4]   The United States Court of Appeals for the Eighth Circuit affirmed the dismissal on April 27, 2016 (Doc. Nos. 53, 54).

In this case, Defendants state that Plaintiff cannot show retaliation, because Kelley and Watson were not even parties to that prior lawsuit or involved in the correspondence issue.  In addition, they state that Defendants Kelley and Outlaw were not involved in the transfer decision, which was initiated by Defendant Jenkins (Doc. No. 49-3, p. 1) Furthermore, Defendant Outlaw denies that he threatened Plaintiff with a transfer if he did not dismiss the prior lawsuit, and non-party Ronald Watson denies the same. (Doc. No. 49-1, pp. 6-7; Doc. No. 49-8)  Finally, Defendants state that Plaintiff has not met his burden of showing that "but for" an unconstitutional retaliatory motive, the transfer would not have

---

[4]Defendants Kelley and Robinson were dismissed on July 6, 2015 (Doc. No. 20). Plaintiff did not allege their involvement with the correspondence issue.

occurred, citing <u>Webb v. Hedrick</u>, 409 F.App'x 33, 35 (8th Cir. 2010).

In Response, Plaintiff states a material dispute of fact exists concerning whether he was transferred in retaliation for exercising his constitutional right.

In order to support a retaliation claim against Defendants, Plaintiff must allege and prove "that he engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against [him] that would chill a person of ordinary firmness from engaging in that activity." <u>Lewis v. Jacks</u>, 486 F.3d 1025, 1028 (8th Cir. 2007). In addition, as noted by Defendants, it is the Plaintiff's burden to show that "but for" an unconstitutional, retaliatory motive, the transfer would not have occurred. <u>See</u> <u>Sisneros v. Nix</u>, 95 F.3d 749, 752 (8th Cir. 1996). Although there is a dispute of fact concerning Plaintiff's allegation that Defendant Outlaw threatened him with a transfer, the Court finds that other uncontroverted evidence weighs heavily against the finding of a retaliatory motive. First, Defendant Jenkins stated in her declaration that she initiated Plaintiff's transfer to VSM as part of a prisoner exchange, and that the ADC transfers inmates from unit to unit on a daily basis. (Doc. No. 49-3, p. 1) Next, in his deposition testimony, Plaintiff stated that his evidence of retaliation was "upon information and belief." (Doc. No. 50-12, p. 20) Plaintiff has provided no other specific facts or evidence in support of his retaliation allegations, and he provides no facts in response to Defendants' Motion to support his claim that "but for" the prior lawsuit, he would not have been transferred. Therefore, the Court finds that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right.

### 2.      Correspondence

#### a)      Exhaustion

Defendants state this retaliation issue also should be dismissed, for failure to exhaust. According to Barbara Williams, Plaintiff filed three grievances concerning the denial of correspondence.  (Doc. No. 49-7, p. 5) In VSM 15-03394, filed July 29, 2015, Plaintiff complained that  he was denied the right to correspond with his wife and sister.  (Doc. No. 49-10, p. 1) Defendants note that although Plaintiff mentioned that Outlaw had previously approved the correspondence, he did not allege Outlaw's involvement in the denial, or that Outlaw or any one else retaliated against him.  On appeal, this grievance was denied.  (Doc. No. 49-10, p. 3)  In VSM 15-3933, filed September 1, 2015, Plaintiff again complained that he was denied the right to correspond with his wife, and named Defendant Kelley and the wardens and deputy wardens at VSM and McPherson.  (Doc. No. 50-1).  This grievance was rejected as duplicative of 03394, and Plaintiff appealed, stating that he was naming different people involved in the situation.  (Id., p. 2)  However, the appeal was denied as duplicative. (Id., p. 3)  In VSM 15-05329, filed December 8, 2015, Plaintiff complained that correspondence mailed to his wife was improperly returned to him, and he named Kelley, mailroom employees at McPherson and "any other Deputy Director who may have interfered with my constitutional rights." (Doc. No. 50-4) The grievance was found without merit and affirmed on appeal. (Id., pp. 2-3)  Defendants state that because Plaintiff never alleged retaliation in these grievances, his retaliatory denial of correspondence claim should be dismissed.

Again, Plaintiff states a material dispute of fact exists concerning whether he exhausted his remedies.

Having reviewed the grievances at issue, the Court agrees with Defendants that Plaintiff did not exhaust his retaliation claim with respect to the denial of correspondence. He clearly complained about denial of his right to correspond, but never alleged retaliation by any of the named Defendants.   Therefore, this claim should be dismissed without prejudice for failure to exhaust.

### D.    Miscellaneous Claims

#### 1.    Official Capacity

The Court agrees with Defendant Kelley, that Plaintiff's monetary claims against her in her official capacity should be dismissed.  Kelley is the only Defendant sued in her official capacity, and such claims for money damages are barred by sovereign immunity.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 66-67 (1980).

#### 2.    Defendant Dixon

In Plaintiff's deposition testimony, he admitted that Defendant Dixon did not violate his rights.  (Doc. No. 50-12, p. 24)  Therefore, the Court agrees with Defendant that she should be dismissed from this lawsuit.

#### 3.    Respondeat Superior Liability/Involvement with Grievances

Plaintiff's allegations in his Complaint that Defendants Kelley, Watson, Straughn, Evans, and Reed failed to take corrective action with respect to violations of his rights, also should be dismissed pursuant to respondeat superior.  Supervisor liability is limited in § 1983

actions, and a supervisor cannot be held liable on a theory of respondeat superior for his or her employee's allegedly unconstitutional actions.  See White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994).   A supervisor incurs liability only when personally involved in the constitutional violation or when the corrective inaction constitutes deliberate indifference toward the violation.  Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993).  In this case, Plaintiff does not provide any proof that these Defendants were aware of constitutional violations and failed to correct improper actions. In addition, his allegations against Defendants Watson, Straughn, Evans, and Reed, with respect to their involvement in the grievance process, should be dismissed.  A "[prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates....it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment."  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (quoting Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982)). Plaintiff "does not have a federal claim regarding how his grievances were processed, investigated, or responded to, even if they were not done by the appropriate personnel or in accord with the policies."  Edgar v. Crawford, No. 08-4279-CV-C-SOW, 2009 WL 3835265, *3 (W.D.Mo. 2009).

## IV.    Conclusion

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. No. 49) be GRANTED, and Plaintiff's Complaint against Defendants be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 12th day of December, 2016.

_____
    JEROME T. KEARNEY
    UNITED STATES MAGISTRATE JUDGE